STREET et al. v. FOURTH JUDICIAL DISTRICT COURT, UTAH COUNTY et al.

No. 7045.   Decided March 26, 1948.   (191 P. 2d 153.)

See 5 C. J. S., Appeal and Error, sec. 1969. Right of trial court to grant new trial as affected by appellate proceedings, see note, 139 A. L. R. 340. See, also, 3 Am. Jur. 737.

*Skeen, Thurman & Worsley, Owen, Beless, Ward & Burnham* and *White, Wright & Arnovitz,* all of Salt Lake City, for plaintiffs.

*George B. Stanley,* of Heber City, for defendants.

WOLFE, Justice.

Original mandamus proceedings in this court to compel defendant judge to make an order striking certain paragraphs from the amended and supplemental complaint of defendant Graham in the case of *Graham* v. *Street and Siegel.* In this opinion we shall refer to the applicants for the writ as plaintiffs, the Fourth District Court as defendant court, Hon. William Stanley Dunford as defendant judge, and Arthur Graham as defendant Graham.

This proceeding is another phase of the case of *Graham* v. *Street and Siegel,* reported in 109 Utah 460, 166 P. 2d 524. To furnish the necessary background for a proper understanding of this case, it is necessary to review briefly the facts of that case.

Defendant Graham commenced an action against the plaintiffs herein, alleging that defendant Graham and plaintiff Street had entered into an oral partnership agreement for the purpose of acquiring and operating certain machinery, and for dividing the profits equally between them; that plaintiff Street wrongfully applied partnership moneys to other than partnership purposes; and that plaintiffs conspired together to withhold from Graham and to misappropriate the partnership funds, and to exclude Graham from any management or control of the partnership business. Graham prayed that the partnership between him and plaintiff Street be dissolved, and that an accounting be had of all the monies collected by the defendants and each of them from the dealings and transactions and operation of the partnership property and from the sale of the

said partnership property. He also prayed for general relief and costs.

At the conclusion of that trial, which was had in defendant court before defendant judge, the judge made findings of fact and conclusions of law, and made and entered an interlocutory decree in which it was decreed, insofar as material here, that Graham and Street had entered into a partnership agreement which was still in full force and effect, and further providing as follows:

"3. That the defendants [plaintiffs here] and each of them are hereby ordered to file in this court within twenty days from the entry hereof an accounting as follows:

"(a) That said account set forth all monies which they and each of them have received from the operation of the partnership capital assets set forth in paragraph 2 herein, and any other assets purchased or leased by the partnership or by the use of partnership funds since August 6, 1943, to date, said account to state from whom said payments were received and the date of the receipt of payment;

"(b) That said account set forth the date of the purchase of any equipment purchased or leased for partnership purposes herein, and the costs of the same, and from whom purchased or leased;

"(c) That said account set forth all expenditures made for operating and maintaining the partnership capital assets, the date of each expenditure, for what expended, to whom paid and the amount thereof;

"(d) That said account set forth all monies received from any sale of any and all of the partnership capital assets hereinabove set forth;

"(e) That said account set forth the capital assets, if any, other than money, now in the possession of the defendants, or either of them, which belong to the said partnership; * * *."

It will be noted that that part of the decree requiring an accounting made no reference whatsoever to fair rental value of the partnership capital. This is important, and, as will be shown hereafter, gives rise to the action now before us. The decree further provided that defendant court should retain jurisdiction of the case

"to settle all accounts between the parties * * *, to dissolve the partnership * * *, and to make such further orders, judgments and decrees"

as might be just and equitable,

"to the end that a full and complete settlement of the entire controversy existing between" the parties should be made. (Italics ours.)

Under the authority of *Attorney General* v. *Pomeroy,* 93 Utah 426, 73 P. 2d 1277, 114 A. L. R. 726, we entertained an appeal from the above mentioned interlocutory decree, and the findings of fact in support thereof. The case being in equity, we carefully re-examined the evidence, and, independently, arrived at the same result as the court below (defendant court). Our affirmance was in this language [109 Utah 460, 166 P. 2d 536]:

"The decree of the lower court, dated June 15th, 1945, is affirmed."

The paragraph of the opinion next immediately preceding the order of this court was as follows:

"If the partnership ceased to exist in fact by the conduct Street brought home to Graham or by the answer of Street denying the partnership filed May 29th, 1944, which must be considered notice to Graham, or after the sale of the property on Jan. 12, 1945, equity will nevertheless treat the partnership as existing and require an accounting of the profits *or of the rental value, whichever may be the greater.* Equity will not permit a party in a relationship of trust and confidence to profit from his own wrong." (Italics added.)

On petition for rehearing, the italicized portion of the above quotation was ordered stricken from the opinion and the petition was denied.

The case was remitted to the defendant court and plaintiffs filed their accountings pursuant to the interlocutory decree affirmed by us. To these accountings defendant Graham filed a pleading denominated "Objections to Accounting by Defendants and Supplemental Complaint," in which he adopted all of the allegations of his amended complaint (upon which the case was tried), and further alleged that defendant court had made its findings, conclusions, and interlocutory decree; affirmance of the interlocutory decree of this court; the order of defendant court

ordering plaintiff to file their accountings; and that plaintiffs had filed accountings. He then set forth specific objections to the accountings filed by plaintiffs. Graham then further alleged in substance as follows (Numbers are paragraph numbers of the supplemental complaint):

9. The plaintiffs were unskilled in the operation of the partnership business.

10. If plaintiffs had been skilled in the management of the business, and fully accounted to the defendant court as ordered, they should have made in excess of the fair rental value of the partnership equipment.

11. That Graham was skilled in the management of the partnership business, and by the fraudulent acts of the plaintiff he was deprived of the management of the business, and of profits which would have exceeded the fair rental value of the partnership equipment.

12-15. That the fair monthly rental value of all of the partnership equipment was $1,193.

16, 17. That because of the fraudulent acts of the plaintiffs the partnership was damaged (to the date of filing the pleading) in the sum of $43,758.50, and that it had been deprived of its assets and business to its damage in the sum of $88,773.33.

18. That a reasonable attorney's fee for establishing, maintaining, and dissolving the partnership was $5000.

19. "That in equity and good conscience the accountings made by the defendants * * * should be rejected * * *, and the accounting made on a rental basis; * * *."

From these allegations Graham, in his Second Amended and Supplemental Complaint, prayed that plaintiffs' accounting be rejected and that plaintiffs be required to account for damages in the sum of $43,758.50 and for the additional sum of $1,193 per month from the date of filing until the account was fully settled; for damages for loss of future rents, issues and profits in the sum of $88,773.33; for attorney's fees in the sum of $5000, and for general relief.

Plaintiffs interposed a motion to strike paragraphs 9 to 19, inclusive, and the motion was denied by defendant judge. Plaintiffs moved to reconsider the motion and to vacate the order denying the motion to strike. This motion was also denied, with leave to plaintiffs to file any pleading they deemed advisable in answer to Graham's Second Amended and Supplemental Complaint.

Plaintiffs thereupon commenced this action in this court, praying for a writ of mandamus ordering defendant judge to strike from Graham's Second Amended and Supplemental Complaint the paragraphs numbered 9-19 inclusive. We granted the alternative writ ex parte.

Summarizing briefly: Graham commenced an action against plaintiffs for an accounting of partnership profits and for general relief. The trial court, by its interlocutory decree found that a partnership existed between Graham and Street, that plaintiffs had wrongfully deprived Graham of the management and control of the partnership assets that Graham was entitled to equitable relief, and that plaintiffs should account to Graham for profits of the partnership and for the partnership assets. That decree was affirmed by this court. After remittitur from this court was received in defendant court, Graham was permitted by defendant court to amend his complaint to demand an accounting on the basis of reasonable rental value of the partnership property. Plaintiffs bring this action to compel defendant court to strike from plaintiff's amended complaint, all paragraphs asserting a right to an accounting on the basis of rental value of the property.

Plaintiffs' theory in bringing this action is based on the following syllogism: Whenever an appellate court determines that the trial court has failed, or threatens to fail, to construe properly or to apply properly the mandate handed down to the trial court, the appellate court should undertake to enforce compliance with its mandate, properly construed, through the means of an appropriate extraordinary writ. In the instant case the trial court has failed to construe properly and now threatens to apply improperly the

mandate of this court. Therefore, this court should issue a writ of mandate to the trial court, directing the trial court to construe properly and so apply the mandate of this court.

Two questions are presented in this proceeding:

(1)   Is mandamus the proper remedy to compel an inferior or trial court to comply with the mandate of a superior or appellate court?

(2)   Assuming that the answer to the first question is in the affirmative, has the defendant court in this case violated, or threatened to violate a clear mandate from this court, so as to entitle the plaintiffs to the writ prayed for?

It should be made clear that the question as to what is the proper method of accounting is not before us in this proceeding. The narrow question before us here is whether or not defendant court has violated a clear mandate from this court, and if so, whether or not the writ of mandate should issue to compel that court to comply with our mandate. We proceed to a consideration of the first question above stated.

It is the general rule that a writ of mandamus may issue to compel the performance of a purely ministerial act by an inferior court, board, tribunal or officer. The act sought to be coerced must be one specially enjoined by law, and both the duty to perform the act, and the right of the applicant to have the act performed must be clear. Mandamus will not issue to compel the performance of a discretionary act. These fundamental principles are so familiar as to require no citation of authority.

The rule in this state, and in most other jurisdictions, is that resort to mandamus may be had to compel an inferior court to comply with the mandate of a superior court. The rule was well stated in the opinion of Mr. Justice Ephraim Hanson in the case of *Utah Copper Co.* v. *District Court,* 91 Utah 377, 64 P. 2d 241, 250:

"The rule is well established and there does not seem to be anything to the contrary that when a case has been determined by a reviewing court and remanded to the trial court, the duty of the latter is to comply with the mandate of the former. The mandate is binding on the

lower court and must be strictly followed and carried into effect according to its true intent and meaning as determined by the directions given by the reviewing court. When the trial court fails or refuses to obey or give effect to the mandate or remittitur, or misconstrues it or acts beyond its province in carrying it out, it becomes the province and duty of the appellate court to enforce compliance therewith, and it is generally recognized that such may be done on writ or order of mandamus. The lower court upon remand of a case from a higher court, must obey the mandate or remittitur and render judgment in conformity thereto and has no authority to enter any judgment not in conformity with the order. Whatever comes before and is decided and disposed of by the reviewing court is considered as finally settled and the inferior court to which a mandate issues is bound by the decree as the law of the case and must carry it into execution according to the mandate, and after the reviewing court has determined the case before it and remanded it to the lower court, the latter is without power to modify, alter, amend, set aside, or in any manner disturb or depart from the judgment of the reviewing court; that the judgment of the higher court is not reviewable in any way by the court below and the lower court cannot vary or examine the decree of the higher court for any other purpose than execution, or give any other or further relief or review it even for apparent error upon any matter decided on appeal, or meddle with it further than to settle so much as has been remanded."

See also 9 Brancroft's Code Practice and Remedies, Sec. 7429, 7448.

This sufficiently disposes of the first question. Mandamus is a proper remedy to compel compliance by an inferior or trial court with the mandate of a superior ■ or appellate tribunal. We turn now to the second, and more difficult question.

Before examining directly into our decree, with the view of determining whether or not defendant court has violated it, it may be profitable to observe some of the general principles involved in the construction of the mandate of an appellate court to a trial court, particularly as to amendment of pleadings after remittitur.

As a general rule, where a judgment or decree is affirmed or reversed and remanded with directions to enter a particular judgment, the trial court may not permit amended or supplemental pleadings to be framed to try rights

already settled. 9 Bancroft, op. cit. Sec. 7430. This ■ rule is not only reasonable, but necessary, if litigation is ever to come to an end. After an appellate court has once ruled upon issues presented to it, such ruling becomes the law of the case, and the trial court is bound to follow it, even though it considers the ruling erroneous.

But where the entire case is not settled by the appellate tribunal where certain issues are left open by its judgment or decree, the trial court ordinarily has discretion to permit amended or supplemental pleadings as to those matters which have been left open.

The rule is well stated in 3 Am. Jur. 737, Sec. 1241:

"If a cause is remanded without specific directions, or with general directions for a new trial either upon an affirmance or reversal, the lower court has, as a general rule, the power to permit amendments and the parties are free to make such proper amendments to the pleadings as the trial court in its discretion may allow. In fact, they may be permitted to file supplementary pleadings and vary and expand the issues or form new ones under proper restrictions. Thus, generally, after affirmance or reversal of an order sustaining or overruling a a demurrer to a pleading, such pleading may generally be amended after the case is remanded to the lower court, even though, as originally drawn, it did not state a cause of action or defense. * * * And while it may be said that such amendments to the pleadings are not a matter of right, but may be allowed in the discretion of the court it is the duty of the trial court to exercise its discretion in the matter of allowing amendments, unless the findings and conclusions of the appellate court cover the entire case and leave nothing open for further examination, thereby making it the duty of the trial court to enter judgment in accordance with the decision rendered."

The principles boil down to this fundamental proposition: As to all matters adjudicated by the appellate court, both the trial court and the parties are foreclosed from further trying those matters. They become the law ■ of the case. But as to matters left open by the appellate court, it is within the sound discretion of the trial court to permit amended or supplemental pleadings as to those matters.

The case before us must turn on this narrow question: Did this court, by its affirmance of the interlocutory decree

of the defendant court, foreclose defendant court from ordering plaintiffs herein to account to Graham on any other than a profits basis? If so, the writ of mandate must issue; if not, the writ must be denied.

Up to the time of the entry of the interlocutory decree the only issues which had been tried were those necessary to determine whether or not plaintiffs were liable to Graham on any basis, i. e., whether or not Graham was entitled to any relief of any kind as against plaintiffs. The issues there involved were whether or not a partnership ever existed between Graham and Street; whether or not such partnership had ever been terminated, and if so, when; whether or not Siegel was a proper party defendant in that action; and certain procedural questions not necessary to be noticed here. Evidence as to partnership profits, and as to other similar matters was carefully excluded. It was apparently the purpose of defendant court, and of the parties to that action, to determine first whether or not Graham was entitled to *any* relief against plaintiffs. If it should be found that a partnership existed, and that plaintiffs had been guilty of the wrong-doing alleged by Graham, then a second trial or inquiry should be had for the purpose of determining the relief to which Graham should be entitled. When we entertained the appeal from the interlocutory decree we had before us only those matters which had been litigated by defendant court. The question of what relief Graham was entitled to was not before us. Any expressions of opinion by us as to what relief Graham was entitled to were mere dicta—not the law of the case and not binding either upon us or upon defendant court.

By the terms of the interlocutory decree affirmed by us, defendant court retained jurisdiction of the cause to settle all accounts between the parties, to dissolve the partnership and to make such further orders, judgments, and decrees as might be just and equitable. We affirmed the decree unconditionally, and without modification. How then can it be argued that by our decree of affirmance we foreclosed the defendant court from entertaining any amendments to

the pleadings necessary to bring about an equitable result?
By affirming the order requiring plaintiffs to account for
the profits and partnership assets, we did not thereby pre-
clude the court from making a supplementary order re-
quiring an accounting on a different basis, if it should deem
such necessary to accomplish an equitable result. By our
decree of affirmance we said in substance to the defendant
court:

"We have examined into all of the issues thus far determined by
you, and find that you have decided them all correctly. There has
been no error thus far. You may proceed."

We did not tell the court in what manner it should proceed.
We did not lay down a course to follow. We merely re-
mitted the cause to defendant court to be disposed of in
accordance with the principles of equity jurisprudence. By
refusing to grant plaintiff's motion to strike, the defendant
court violated neither the letter nor the spirit of our man-
date.

Plaintiffs had relied strongly on the fact that on their
petition for rehearing in the former case, we struck from
our opinion that language suggesting an accounting on a
rental basis. Plaintiffs contend that by striking that lan-
guage we clearly indicated that they should be required to
account on a profit basis, and in no other manner. Such was
not our purpose in striking that language. The language was
stricken because it was dicta which might have been con-
strued by the defendant court as requiring Street and Siegel
to account on a rental or profit basis, whichever was greater,
regardless of the equities of the case. It was our purpose not
to tie the hands of defendant court, but to leave it free to
examine, unfettered, the question of the proper measure of
relief to be accorded to Graham, and to make a decree
accordingly.

The sentence in the opinion immediately following the
stricken language reads as follows:

"Equity will not permit a party in a relationship of trust and con-
fidence to profit from his own wrong."

This sentence, when considered with the provision of the interlocutory decree reserving in defendant court jurisdiction to make such further orders, judgments, and decrees as might be just and equitable, clearly shows ■ that it was not our purpose to restrict the defendant court, nor to limit it to the matter of an accounting of profits. It follows that there has been no violation of, nor departure from, either the letter or the spirit of our mandate.

This opinion is not to be construed as approving an accounting based on rental value. Nor do we determine as correct the defendant court's action in denying the motion to strike. These are matters not before this court, and as to them we express no opinion. The single ■ narrow issue now before us is whether defendant court violated the mandate of this court, by refusing to strike paragraphs 9-19 from Graham's Second Amended and Supplemental Complaint. That issue is resolved in defendants' favor.

If, after the final accounting is made, and a final decree is entered, either party is dissatisfied with the result, we will review on appeal all questions properly brought before us as to the merits of the substantive issues. Plaintiffs are complaining before they are hurt. If they ■ are aggrieved by any ruling of the defendant court, they will have an opportunity to have it reviewed here on appeal from the final decree. But we will not attempt by mandamus or otherwise to supervise every stage in the proceedings of the district court. The defendant court has not violated any clear mandate from us. It follows that the peremptory writ prayed for must be denied, and the alternative writ heretofore issued is recalled. Costs to defendants.

McDONOUGH, C. J., and PRATT, WADE and LATIMER, JJ., concur.