Archie W. THURSTON, Plaintiff and Appellant,

v.

BOX ELDER COUNTY, Defendant and Appellee.

No. 900040.

Supreme Court of Utah.

July 21, 1992.

Philip C. Patterson, Ogden, for Archie Thurston.

Dale J. Lambert, Karra J. Porter, Salt Lake City, and Jon J. Bunderson, Brigham City, for Box Elder County.

STEWART, Justice:

Plaintiff Archie Thurston appeals from a district court order granting summary judgment to defendant Box Elder County. Thurston, a former county employee, claims that his termination pursuant to a county-wide reduction in force ("RIF") violated the Box Elder County Personnel Policies and Procedures Manual ("Manual"), which governed his employment. We reverse and remand.

On an appeal from a summary judgment, we construe the evidentiary material submitted on the motion and all reasonable inferences to be drawn therefrom in a light most favorable to the party opposing the motion. *Berube v. Fashion Centre, Ltd.*, 771 P.2d 1033, 1039 (Utah 1989); *Caldwell v. Ford, Bacon & Davis Utah, Inc.*, 777 P.2d 483, 483 (Utah 1989). We review the district court's legal conclusions for correctness. *Atlas Corp. v. Clovis Nat'l Bank*, 737 P.2d 225, 229 (Utah 1987).

The Box Elder County Road Department hired Thurston in May 1975. From 1983 through 1988, Thurston served as lead worker/foreman. In April 1988, the County adopted a manual which set forth personnel policies, rules, and standards governing employee RIF actions, categories of rule infractions subject to disciplinary action, and administrative grievance procedures. Section II(F) of the Manual defines the standard for implementing a RIF:

> When circumstances (such as lack of funds or lack of work) dictate that a reduction in force is needed, the Elected Official or Department Head shall lay off the necessary number of employees with consideration to length of service and/or individual performance.

In November 1988, the Box Elder County Commission ordered the County Road Department to lay off three employees. On December 16, 1988, County Road Superintendent John Collom gave Thurston a blue slip notifying him that he would be terminated pursuant to the RIF. On December 30, 1988, the County terminated Thurston and permanently eliminated his position.

At the time of the RIF, the Road Department employed twenty-eight persons, twenty of whom had less seniority than Thurston. Collom considered several factors in determining that Thurston should be laid off. When he handed Thurston the blue slip, Collom stated that in making the decision he had considered his belief that financially, Thurston could better tolerate the separation than could some of the younger employees. Collom based this belief on prior statements by Thurston that he could readily obtain employment with a former employer. In a subsequent conversation with Thurston, Collom added poor job performance and insubordination as reasons for the termination. Collom specifically referred to Thurston's poor performance on a fencing project completed two weeks prior to the layoff and on a county road culvert installation project supervised by Thurston the previous summer. This was the first time Collom had expressed dissatisfaction with Thurston's job performance for any reason. Thurston's official personnel file, including annual performance appraisals, showed no disciplinary action for deficient job performance or work conduct, even though Section V of the Manual defines infractions for which an employee may be disciplined as gross neglect of duty, refusal to comply with lawful instructions, insubor-

dination, or incompetency and inefficiency in the performance of job duties.

Thurston appealed his employment termination under the Manual's grievance procedures. At the grievance hearing before the Box Elder County Board of Appeals, Collom testified that in addition to considering Thurston's seniority and his belief that Thurston had a job waiting for him, Collom had selected Thurston for termination for unacceptable job performance on nine different projects. The nine projects spanned an approximate five-year period, during which Collom never invoked the Manual's disciplinary action procedures against Thurston. The Board concluded that Collom's decision to dismiss Thurston complied with the Manual's RIF provisions.

Thurston filed this action against the County in district court for breach of an employment contract and sought to have his employment dismissal set aside.[1] The County moved for summary judgment, arguing that it had properly applied the RIF provisions of its Manual in selecting Thurston for termination. Thurston filed a counter-motion for summary judgment, arguing that his RIF dismissal was wrongful because (1) the County had considered criteria beyond "length of service and/or individual performance" as provided in section II(F) of the Manual, and (2) the County's personnel action relied in part on allegations of poor job performance for which Thurston had never been disciplined under the Manual's disciplinary action provisions.[2]

The trial court denied Thurston's motion and granted summary judgment for the County. The court found that Collom had in fact considered Thurston's length of service and individual performance based on the Manual's RIF provisions, but that the Manual did not require Collom to give any particular weight or value to either of the criteria in selecting Thurston for dismissal. The court also determined that the County did not violate Thurston's due process guarantees when it considered criteria beyond those enumerated in the RIF provisions of the Manual. Finally, the court held that Collom's consideration of the alleged poor job performance for which Thurston had not been disciplined did not violate Thurston's due process rights because the Manual's disciplinary action provisions are independent from a RIF action.

On appeal, the parties essentially repeat their arguments below. Thurston contends that his employment termination did not comply with the RIF provisions of the County's Manual because Collom considered criteria beyond Thurston's length of service and individual performance. Thurston also argues that Collom's consideration of his individual job performance under the RIF provisions of the Manual violated his due process rights because the County relied on instances of deficient job performance for which Thurston had never been disciplined under the provisions of the Manual.

The County responds that the Manual does not preclude consideration of other factors in conjunction with seniority and/or individual performance. The County also argues that the Manual does not require that poor job performance rise to the level of formal disciplinary action before it can be considered in terminating an employee pursuant to a RIF.

For purposes of summary judgment, the parties agreed that Thurston's employment with the County was not terminable at will, but was governed by the Manual. By agreeing that the Manual governed the

---

1. Thurston did not file this action as an appeal to the district court for de novo review of the Board's ruling, but rather as an independent action for breach of an employment contract. We note this only to clarify the procedural posture of this case and do not comment on the correctness or appropriateness of the procedure chosen by Thurston.

2. The basis for Thurston's second point of contention is that the alleged incidents of poor performance fall within the types of infractions for which an employee could be disciplined under Section V of the Manual. Thurston essentially contends that the County's failure to timely discipline him deprived him of his appeal rights under the grievance procedures contained in Section VI of the Manual and that it would be unfair to allow the County to use these incidents as a basis for terminating his employment when he has never had an opportunity to refute the allegations.

terms of Thurston's employment, the parties have essentially cast this case as an action for breach of an express or implied employment contract as contained in an employer's policy manual. If correct, such a classification would place this case within the parameters of *Berube v. Fashion Centre, Ltd.*, 771 P.2d 1033 (Utah 1989).

The parties, however, have inaccurately formulated the issues. Both have overlooked Utah Code Ann. § 17–33–5(3)(n) (1987) (currently codified at § 17–33–5(3)(b)(xv)), which requires the establishment of plans governing county layoffs and sets forth the criteria for establishing those plans.[3] Thus, before considering whether the County breached an employment contract, we must first determine whether the County's plan for layoffs complies with the requirements of Utah Code Ann. § 17–33–5(3)(n).

■ The County Personnel Management Act, Utah Code Ann. §§ 17–33–1 to –15 (1987), provides guidelines for establishing a personnel system which will, among other things, ensure the fair treatment of employees. The Act requires each county director to issue personnel rules for county employees as approved by the governing body, including:

> Establishment of a plan governing layoffs resulting from lack of funds or work, abolition of positions, or material changes in duties or organization, and governing re-employment of persons so laid off, taking into account with regard to layoffs and re-employment the relative

ability, seniority and merit of each employee.

Utah Code Ann. § 17–33–5(3)(n). The Act therefore requires each county to establish a plan for layoffs which takes into account the relative ability, seniority, *and* merit of each employee.[4] Use of the word "and" rather than "or" indicates a legislative intent that all three factors be considered in a plan for layoffs or reemployment. In other words, one factor may not be considered to the exclusion of one or both of the others.

■ The wording of Section II(F) of the Manual, varies from the wording of § 17–33–5(3)(n). The Manual states, "[T]he Elected Official or Department Head shall lay off the necessary number of employees with consideration to length of service *and/or* individual performance." (Emphasis added.) Unlike the statute, which requires consideration of all three factors, the "and/or" language of the Manual allows one factor to be considered to the exclusion of the other and to that extent fails to comply with the requirements of § 17–33–5(3)(n).[5] Clearly, the County was not authorized to adopt a standard different from that found in the statute. We conclude, therefore, that Collom was required to consider all three statutory criteria in making the RIF determinations.[6]

■ The County argues that *Stewart v. Chevron Chemical Co.*, 111 Wash.2d 609, 762 P.2d 1143 (1988), compels a different conclusion. The instant case, however, is distinguishable. In *Stewart*, defendant Chevron implemented a reorganization pro-

---

3. The parties and the district court did not address the effect of this statute. However, in response to a question from the bench during oral argument, the County's attorney stated that the language of section II(F) was based on the provisions of § 17–33–5(3)(n). We consider the statute's effect on this case sua sponte because it is controlling and it would be contrary to public policy to decline to do so.

4. Similar provisions have been adopted by other states. *See, e.g.,* Ariz.Rev.Stat.Ann. § 41–783(14) (1992) (in both reduction in force and reemployment, performance record and seniority in service shall be considered); Neb.Rev.Stat. § 23–2525(14) (1991) (performance record and seniority in service shall be considered); Or.

Rev.Stat. § 240.316(3) (1991) (county shall take into account needs of the service, qualifications, quality of performance, relative merit, and length of service).

5. We note that the Manual may also fail to comply with § 17–33–5(3)(n) in that it requires that only two factors be considered. Arguably, however, individual performance encompasses both ability and merit.

6. We take no position on the particular weight to be given to each of the three factors listed in Utah Code Ann. § 17–33–5(3)(n), but only decide that all three must be considered. Nevertheless, the ultimate determination must not be arbitrary or unreasonable.

gram which included reducing the number of shift supervisors from twelve to eight. Chevron's employee manual provided that "in determining the sequence of layoffs due to lack of work, consideration should be given to performance, experience, and length of service." 762 P.2d at 1144. Chevron selected for termination an employee with the most employment seniority and the lowest performance rating. The employee contended that Chevron breached the terms of its manual by basing his termination solely on poor performance. The court disagreed and stated that Chevron's policy did not create an obligation to consider all three factors. *Id.* at 1145. Throughout portions of the manual, Chevron had used the terms "shall," "will" and "must," but in the layoff provisions it used "should," indicating that Chevron intended the provisions to be advisory. *Id.* at 1145–46.

In contrast, § 17–33–5(3)(n) creates a statutory obligation that counties consider relative ability, seniority, and merit in a RIF layoff. The manual in *Stewart* involved contractual obligations not governed by statute; thus, Chevron was free to adopt any RIF policy. In view of the County Personnel Management Act, Box Elder County does not have that liberty and must give consideration to all three factors enumerated in § 17–33–5(3)(n).

■ We next consider whether, under § 17–33–5(3)(n), a county may consider factors in addition to relative ability, seniority, and merit. The purpose of § 17–33–5(3)(n) is to set a standard which county employers must follow and upon which employees can rely. In particular, this section contemplates that a plan will provide county employees with notice of how a RIF action will be implemented and how it will affect them. Given this purpose, we hold that the statute precludes consideration of factors not enumerated.

Employees necessarily rely on a county's statement of procedures governing layoffs and conduct themselves accordingly. As the Washington Supreme Court observed, the expectations created by a personnel policies manual justify such a reliance:

It would appear that employers expect, if not demand, that their employees abide by the policies expressed in such manuals. This may create an atmosphere where employees *justifiably rely* on the expressed policies and, thus, justifiably expect that the employers will do the same. Once an employer announces a specific policy or practice, especially in light of the fact that he expects employees to abide by the same, the employer may not treat its promises as illusory.

Therefore, we hold that if an employer, for whatever reason, creates an atmosphere of job security and fair treatment with promises of *specific treatment in specific situations* and an employee is induced thereby to remain on the job and not actively seek other employment, those promises are enforceable components of the employment relationship. We believe that by his or her unilateral objective manifestation of intent, the employer creates an expectation, and thus an obligation of treatment in accord with those written promises.

*Thompson v. St. Regis Paper Co.*, 102 Wash.2d 219, 685 P.2d 1081, 1088 (1984) (emphasis in original).

Even though *Thompson* involved a private employer rather than a public employer under a statutory mandate, the point made is equally applicable to the instant case. Employees have a right to rely on the layoff and termination procedures advanced by their employers. Furthermore, permitting the County to consider any factor in making decisions for layoffs due to a RIF would defeat the policy of the County Personnel Management Act of ensuring the fair treatment of employees. Allowing consideration of factors beyond those stated in the Act would, in effect, result in no layoff plan at all, thereby nullifying § 17–33–5(3)(n) altogether, and leaving employees subject to arbitrary treatment by their superiors.

■ In sum, the County had an obligation to comply with the statutory provisions of 17–33–5(3)(n) in writing its manual and dealing with employees, and Thurston had the right to expect that the County

would. To the extent that Collom considered factors in addition to seniority, ability, and merit, the County's termination of Thurston's employment was in violation of the Act.

We reverse and remand to the district court for reconsideration consistent with this opinion.

HOWE, Associate C.J., and DURHAM, J., concur.

ZIMMERMAN, Justice, dissenting:

I dissent. The majority bases its decision in this case not on whether Box Elder County complied with the terms of its personnel manual, but on whether it complied with the provisions of a state statute that is inconsistent with the county manual, an issue that was not raised by either party before the trial court, and was not briefed or argued before this court. Moreover, the majority proceeds on this ground without giving either party notice or an opportunity to brief the issue. I cannot join in such a substantial departure from normal appellate procedure.

Considering the matter on the grounds argued by the parties, I would affirm. The county manual does not make consideration of both factors mandatory, nor does it make them the exclusive factors that can be considered. Under these circumstances, I find no triable issue of fact.

HALL, C.J., concurs in the dissenting opinion of ZIMMERMAN, J.