Archie W. THURSTON, Plaintiff, Appellant, and Cross–Appellee,

v.

BOX ELDER COUNTY, Defendant, Appellee, and Cross–Appellant.

No. 930498.

Supreme Court of Utah.

March 24, 1995.

Philip C. Patterson, Ogden, for plaintiff.

Dale J. Lambert, Karra J. Porter, Salt Lake City, for defendant.

STEWART, Associate Chief Justice:

This case was previously before the Court in *Thurston v. Box Elder County,* 835 P.2d 165 (Utah 1992) (*"Thurston I"*). There, we reversed a summary judgment in favor of defendant Box Elder County and remanded to the trial court to determine whether the County violated § 17–33–5(3)(n) (currently codified at § 17–33–5(3)(b)(xv)) of the County Personnel Management Act, Utah Code Ann. §§ 17–33–1 to –15 (1987) (the "Act"), when making its decision to terminate plaintiff Archie W. Thurston's employment. On remand, the trial court ruled that the Act governed the dispute and that the County had improperly considered factors beyond those enumerated in the Act in terminating Thurston. On that basis, the court held that

the County had violated Thurston's due process rights and breached its employment contract with Thurston. In addition, the trial court ruled that reinstatement was not a proper remedy but that damages should be awarded, calculated from the date of Thurston's termination until the date he began other full-time employment.

Thurston again appeals. He asserts that reinstatement with back pay is the only appropriate remedy for his wrongful termination action. On cross-appeal, the County argues that the trial court erred in ruling that Thurston was wrongfully terminated. The County asserts that the trial court erred in ruling that the Act governed and that without considering the selection criteria for reduction in force that were read into the employment contract by virtue of the Act, judgment for the County is proper. We affirm.

The County employed Thurston in the Box Elder County Road Department from May 1975 through December 1988. From 1983 through 1988, Thurston worked as the bridge and culvert foreman.

In April 1988, the County adopted the Box Elder County Policy and Procedures Manual (the "Manual"), which set forth personnel policies, rules, standards governing employee reduction in force actions, categories of rule infractions subject to employee disciplinary action, and an administrative grievance procedure.[1] The Manual provided that length of service and/or individual performance be considered when implementing a reduction in force.

During November 1988, the Box Elder County Commission ordered a county-wide reduction in force ("RIF") and instructed the road department to lay off three employees. At that time, the road department employed twenty-eight persons, twenty of whom had less seniority than Thurston. Road department superintendent John Collom reviewed the Manual before implementing the RIF and knew that he was required to consider length of service and/or individual perfor-

mance when deciding who should be selected for the RIF from the road department.

On Friday, December 16, 1988, Collom notified Thurston that his employment would be terminated pursuant to the RIF. At that time, Collom told Thurston that he had been selected for the RIF because he could tolerate the separation better financially than some younger road department employees with families. Collom had based this belief upon prior statements made by Thurston that Thurston could readily obtain employment with a former employer. The conversation between Collom and Thurston was interrupted; they met again on Monday, December 19, 1988, to discuss the RIF action. During the Monday conversation, Thurston challenged Collom's reason for selecting Thurston for the RIF, stating that financial considerations did not constitute a valid reason under the Manual. Collom then explained that the real reason was Thurston's poor work performance. The County terminated Thurston's employment on December 30, 1988.

Thurston appealed his layoff through the County's established grievance procedures. At the grievance hearing, Collom identified ten or eleven work projects spanning an approximate five-year period in which Thurston had performed poorly. A majority of the board found that the County had complied with the provisions in the Manual concerning the RIF and upheld the County's termination of Thurston's employment.

Thurston then filed an action against the County for breach of an employment contract and sought reinstatement of his employment. The County moved for summary judgment, asserting that it had properly applied the Manual's reduction in force criteria when determining to terminate Thurston's employment. The trial court granted the County's motion, stating it was uncontroverted that the County considered both seniority and individual performance, as required by the Manual, when selecting Thurston for the RIF and that the County was not precluded

---

1. The Manual was the successor to the County's policies and personnel manual enacted in 1984 and amended in 1984 and 1987. The Manual continued substantially unchanged in organizational format and content from the 1984 enactment.

from considering additional factors. Thurston appealed.

This Court reversed and remanded the case for a determination whether the County violated the Act by considering factors not enumerated in the Act. *Thurston I*, 835 P.2d at 169–70. The Court held that the County was obligated to comply with the Act when adopting a standard for reductions in force and that to the extent Collom considered factors in addition to seniority, ability, and merit, the County's termination of Thurston's employment violated the Act. *Id.* at 168–70.

On remand, the County sought to introduce evidence that it was not bound by the Act because the Act was optional for counties with fewer than 130 employees not covered by other merit systems. The trial court refused to consider the County's argument, stating that *Thurston I*, which was the law of the case, mandated the County's compliance with the Act. The court found that Collom had considered factors other than seniority, ability, and merit in selecting Thurston for the RIF and, in so doing, failed to treat Thurston with equity and fairness. Accordingly, the court held that the County had violated Thurston's due process rights, thereby breaching its employment contract with Thurston. The court denied Thurston's petition for reinstatement but awarded Thurston damages to be calculated from the date his employment was terminated to the time he assumed other full-time employment.

## LAW OF THE CASE

■ We first address the County's contention that the trial court erred by failing to independently determine whether the RIF was governed by the Act. The County argues that whether it was subject to the Act was a question of fact and that the evidence proffered during trial was uncontroverted

that the County was not subject to the Act at the time of the RIF. The County claims, therefore, that the court erred by holding the County's RIF subject to the Act's reduction in force criteria and that judgment must be granted for the County because it properly complied with the Manual's reduction in force criteria. The County's argument is without merit. The trial court ruled that the County was bound to follow the Act because *Thurston I* so held "and that is the law of the case and is binding." The trial court was precluded from considering the Act's applicability by reason of the law of the case and properly refused to consider the County's evidence on that issue.

■ The "law of the case" is a legal doctrine under which a decision made on an issue during one stage of a case is binding in successive stages of the same litigation. *Plumb v. State*, 809 P.2d 734, 739 (Utah 1990). The doctrine was developed in the interest of economy and efficiency to avoid the delays and difficulties involved in repetitious contentions and reconsideration of rulings on matters previously decided in the same case. *Richardson v. Grand Central Corp.*, 572 P.2d 395, 397 (Utah 1977); *State v. O'Neil*, 848 P.2d 694, 697 (Utah Ct.App.), *cert. denied*, 859 P.2d 585 (1993); *see also* 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4478 (1981) [hereinafter Wright]; 1B James W. Moore et al., *Moore's Federal Practice* ¶ 0.404 [hereinafter Moore].

■ Law of the case terminology has been applied to a number of distinct sets of problems, each with a separate analysis.[2] One branch of the doctrine, often called the mandate rule, dictates that pronouncements of an appellate court on legal issues in a case become the law of the case and must be followed in subsequent proceedings of that

---

2. Law of the case terminology has been employed when addressing at least four distinct sets of problems. It has been used to justify a trial court's refusal to reconsider matters in a continuing proceeding and an appellate court's declining to reconsider matters resolved on a prior appeal. The terminology has also been used to express the principle that inferior tribunals are bound to honor the mandate of superior courts within a single judicial system. A third set of

problems involves the respect that one judge or panel owes to the rulings of another judge or panel in a co-equal or coordinate court in the same or a closely related case. Finally, law of the case terminology has been employed to describe the rule that a lower court ruling becomes binding on a higher court through failure of the parties to preserve an issue for review. *See* Wright, § 4478; Moore ¶ 0.404[1]–[10].

case. *See Petty v. Clark,* 113 Utah 205, 215, 192 P.2d 589, 594 (1948); *see also* Moore ¶ 0.404[1]. The lower court must not depart from the mandate, and any change with respect to the legal issues governed by the mandate must be made by the appellate court that established it or by a court to which it, in turn, owes obedience. *Insurance Group Comm. v. Denver & Rio Grande W. R.R.,* 329 U.S. 607, 612, 67 S.Ct. 583, 585, 91 L.Ed. 547 (1947); *see also* Moore ¶ 0.404[1]. In addition, the lower court must implement both the letter and the spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces. *Street v. Fourth Judicial Dist. Court,* 113 Utah 60, 71–72, 191 P.2d 153, 159 (1948); *see also Rocky Mountain Thrift Stores, Inc. v. Salt Lake City Corp.,* 887 P.2d 848 (Utah 1994); *Bankers Trust Co. v. Bethlehem Steel Corp.,* 761 F.2d 943, 949 (3d Cir.1985); *Colville Confederated Tribes v. Walton,* 752 F.2d 397, 400 (9th Cir.1985), *cert. denied,* 475 U.S. 1010, 106 S.Ct. 1183, 89 L.Ed.2d 300 (1986).

The application of the mandate rule lacks the flexibility found in other branches of the law of the case doctrine. Moore ¶ 0.404[10]. The mandate must be followed even though the lower court subsequently addressing the issue may believe that the issue could have been better decided in another fashion. *Petty,* 113 Utah at 215, 192 P.2d at 594; *Davis v. Payne & Day, Inc.,* 12 Utah 2d 107, 108–09, 363 P.2d 498, 499 (1961); *Helper State Bank v. Crus,* 95 Utah 320, 325, 81 P.2d 359, 361 (1938); *Forbes v. Butler,* 73 Utah 522, 525, 275 P. 772, 773 (1928). This serves the dual purpose of protecting against the reargument of settled issues and of assuring adherence of lower courts to the decisions of higher courts. *People v. Roybal,* 672 P.2d 1003, 1005 (Colo. 1983) (en banc).

Accordingly, under the law of the case, the trial court was required to follow the decision of this Court in Thurston's first appeal with respect to the issues that were decided therein. In *Thurston I,* this Court stated:

We conclude ... that Collom was required to consider all three statutory criteria in making the RIF determinations.

. . . .

... [T]he County had an obligation to comply with the statutory provisions of 17–33–5(3)(n) in writing its manual and dealing with employees, and Thurston had the right to expect that the County would. To the extent that Collom considered factors in addition to seniority, ability, and merit, the County's termination of Thurston's employment was in violation of the Act.

We reverse and remand to the district court for reconsideration consistent with this opinion.

*Thurston I,* 835 P.2d at 168, 169–70 (footnote omitted). Clearly, the letter and the spirit of *Thurston I* indicate that the County was bound to comply with the reduction in force criteria established by the Act when making its decision to terminate Thurston's employment. The trial court was required to follow the law of this case and correctly refused to consider evidence from the County that the Act was inapplicable to its RIF.

By the foregoing, we do not suggest that a decision of this Court may never be reconsidered. Rule 35 of the Utah Rules of Appellate Procedure provides a mechanism whereby a party may petition this court for rehearing. The County did not petition for rehearing of *Thurston I.* The County was thus bound by the decision of *Thurston I* on remand of this case in all further proceedings below.

In addition, under limited circumstances a court may reconsider its own prior decision. While the County does not identify reconsideration of *Thurston I* as an issue on this appeal, in essence that is what the County seeks. In its brief, the County states, "Because that evidence was uncontroverted, this Court is free to, and should, render the legal determination that the [Act] did not govern Thurston's termination."

A request for our reconsideration of *Thurston I* involves a branch of the law of the case doctrine which is more flexible than the mandate rule. Under this branch, a court is justified in refusing to reconsider matters it resolved in a prior ruling in the same case for reasons of efficiency and consistency. The doctrine is not a limit on power but, "as applied to the effect of previous orders on the later action of the court

rendering them in the same case, merely expresses the practice of courts generally to refuse to reopen what has been decided." *Messenger v. Anderson,* 225 U.S. 436, 444, 32 S.Ct. 739, 740, 56 L.Ed. 1152 (1912); *see also Arizona v. California,* 460 U.S. 605, 618–19 & n. 8, 103 S.Ct. 1382, 1391–92 & .n. 8, 75 L.Ed.2d 318 (1983). It rests on " 'good sense and the desire to protect both court and parties against the burdens of repeated reargument by indefatigable diehards.' " *In re Department of Energy Stripper Well Exemption Litig.,* 821 F.Supp. 1432, 1434 (D.Kan. 1993) (quoting Wright § 4478, at 790). The exceptional circumstances under which courts have reopened issues previously decided are narrowly defined: (1) when there has been an intervening change of controlling authority; (2) when new evidence has become available; or (3) when the court is convinced that its prior decision was clearly erroneous and would work a manifest injustice. *United States v. Rivera–Martinez,* 931 F.2d 148 (1st Cir.), *cert. denied,* 502 U.S. 862, 112 S.Ct. 184, 116 L.Ed.2d 145 (1991); *see Gillmor v. Wright,* 850 P.2d 431, 439 (Utah 1993) (Orme, Ct.App.J., concurring); Wright § 4478, at 790.

■ The County argues that if our ruling in *Thurston I* is interpreted to hold that the County was subject to the Act, it was clearly erroneous and would work a manifest injustice if not reconsidered. In support, the County cites to evidence it presented at trial that the County had less than 130 covered employees at the time of *Thurston I,* which would make the County's compliance with the Act optional, and to testimony by the county commissioners indicating they never intended to bring Box Elder County within the coverage of the Act. Thus, the County asserts that whether the Act was applicable was a question of fact which could not have been decided on the first appeal.

Whatever merit the County's argument may have, we disagree that it compels a conclusion that *Thurston I* was clearly erroneous or manifestly unjust. We did not base our ruling of the Act's applicability upon the number of the County's employees or upon the commissioners' intentions concerning the Act. Rather, we looked to the Act to determine a correct interpretation of the Manual's ambiguous reduction in force criteria. As the County's counsel acknowledged in oral argument, the language in the Manual was based upon the language in the Act. Generally, the only effect of borrowing language from a statute is that when interpreting the borrowed language, a court may look to the interpretations given to that language by courts of the jurisdiction from which the language was borrowed. *Jensen v. Intermountain Health Care, Inc.,* 679 P.2d 903, 904 (Utah 1984). However, in this case the statute would have been binding upon the County under certain circumstances. It is not unreasonable to conclude that the County's act of borrowing the statute's language manifested an intent to be subject to a court's interpretation of the Act when interpreting an ambiguous provision in the Manual.

In light of the issues raised in this appeal, we recognize that *Thurston I* overstated the applicability of the Act to the County's personnel policies and procedures. However, the holding in *Thurston I* will remain the law of the case for purposes of this appeal. *See Helper,* 81 P.2d at 361; *Forbes,* 275 P. at 773. We feel that the interests of the parties and the court are best served by adhering to the interpretation we used in *Thurston I* to resolve the ambiguity of the Manual's reduction in force provision.

Thurston asserts that the trial court's finding of wrongful termination could also be sustained on the ground that the County's actions violated the due process requirements of the Manual. Because we affirm the trial court's finding that the County wrongfully terminated Thurston's employment, we need not address Thurston's due process claim.

### REINSTATEMENT

We now turn to Thurston's contention that the trial court erred as a matter of law by concluding that reinstatement of Thurston's employment with back pay was not the proper remedy in this case. Thurston's argument is twofold. First, he asserts that reinstatement with back pay should be an available remedy for a breach of employment contract

action. Second, he argues that reinstatement with back pay is the only appropriate remedy in this case because it is the only remedy which will make Thurston whole from his wrongful discharge.

■ Whether reinstatement with back pay is a permissible remedy in an action based upon breach of an employment contract is a legal determination. Accordingly, we give no deference to the trial court's conclusion but review it for correctness. *State v. Rio Vista Oil, Ltd.*, 786 P.2d 1343, 1347 (Utah 1990).

■ Reinstatement, a type of specific performance, is an equitable remedy. The right to an equitable remedy is an exceptional one, and absent statutory mandate, equitable relief should be granted only when a court determines that damages are inadequate and that equitable relief will result in more perfect and complete justice. *South Shores Concession v. State*, 600 P.2d 550, 552 (Utah 1979); *see also Delivery Serv. & Transfer Co. v. Heiner Equip. & Supply Co.*, 635 P.2d 21, 21 (Utah 1981) (equitable remedy "normally only granted when damages may not accurately be ascertained or would not adequately compensate the plaintiff"); *Erisman v. Overman*, 11 Utah 2d 258, 262, 358 P.2d 85, 88 (1961) (where adequate legal remedy is available, "one may not seek equity"). However, that an equitable remedy will not be appropriate in many, if not most, actions brought for wrongful termination based upon breach of an employment contract is no reason to refuse to grant reinstatement in every case. For the reasons discussed below, we hold that reinstatement may be considered as a remedy by a trial court when fashioning a remedy for breach of an employment contract. When a trial court determines that under the circumstances of a particular case, an award of damages would be so inadequate as to warrant equitable relief, a court may consider reinstatement as a remedy. Accordingly, we hold that the trial court erred when it concluded as a matter of law that reinstatement is not a permissible remedy in a breach of employment contract action.

Traditionally, reinstatement has been denied as a remedy for breach of an employment contract under the generally accepted rule that contracts for personal services should not be specifically enforced. 5A Arthur L. Corbin, *Corbin on Contracts* § 1204, at 398 (1964) [hereinafter Corbin]. Several reasons underlie this rule. One is the difficulty of enforcing the decree and of measuring the quality of the parties' performance. Corbin § 1204, at 400; 71 Am.Jur.2d *Specific Performance* § 164 (1973). Another is a strong prejudice against involuntary personal servitude and the theory that under mutuality of remedies, if an employer may not seek specific performance an employee should not be entitled to it. Corbin § 1204, at 401; Restatement (Second) of Contracts § 367 cmt. a (1981) [hereinafter Restatement]; 71 Am.Jur.2d at § 164. A third reason is the undesirability of compelling continued personal associations after disputes have arisen or confidences and loyalty have been destroyed. Corbin § 1204, at 401; Restatement § 367 cmt. a.

These reasons are susceptible to closer scrutiny in light of contemporary employment relationships and the need to protect at-will employees from wrongful termination of their employment. *See Peterson v. Browning*, 832 P.2d 1280, 1281 (Utah 1992); *Berube v. Fashion Centre, Ltd.*, 771 P.2d 1033, 1041 (Utah 1989) (plurality opinion). First, we are unpersuaded that a court would have difficulty enforcing an order for reinstatement in a breach of contract action. Reinstatement is an available remedy under state and federal statutory schemes which provide relief for wrongfully discharged employees. *See, e.g.*, Utah Code Ann. § 34–35–7.1(9) (1994) (reinstatement available remedy for discriminatory or prohibited employment practice); Utah Code Ann. § 17–28–12 (Supp.1994) (administrative appeal council may vacate or set aside order for removal from employment of county fire service employee; reviewable in district court); 42 U.S.C. § 1983 (action for deprivation of rights available "at law, suit in equity, or other proper proceeding for redress"); 42 U.S.C. § 2000e–5(g) (court may order appropriate remedy, "which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay"); 29 U.S.C. § 626(b) (court may grant "such legal or

equitable relief as may be appropriate ... including without limitation judgments compelling employment, reinstatement or promotion"). In fact, federal courts have considered reinstatement a "preferred remedy" because it involves the least amount of uncertainty and can most effectively make a wronged employee "whole." *See Blim v. Western Elec. Co.,* 731 F.2d 1473, 1479 (10th Cir.1984), *cert. denied,* 469 U.S. 874, 105 S.Ct. 233, 83 L.Ed.2d 161 (1984); *Stafford v. Electronic Data Sys. Corp.,* 749 F.Supp. 781, 785 (E.D.Mich.1990). There is no reason to believe that reinstatement is necessarily more difficult to administer and enforce as a contract remedy than it would be as a statutory remedy.

Second, reliance on the mutuality of remedies rule to deny equitable relief is unpersuasive, because the rule has long been considered to be without any force. *Utah Mercur Gold Mining Co. v. Herschel Gold Mining Co.,* 103 Utah 249, 255–56, 134 P.2d 1094, 1097 (1943); *see also Cannefax v. Clement,* 786 P.2d 1377, 1390 n. 37 (Utah Ct.App.1990) (Bullock, J., dissenting); Corbin § 1180. While it may sound fair on its face, operation of the rule works inequity. In the reinstatement context, it denies a wrongfully terminated employee continued employment and rewards an employer whose wrongful conduct is motivated by nonmonetary concerns.

Finally, we agree that it is undesirable to compel personal associations in the face of hostilities or lack of confidence and loyalty. Reinstatement would not be an appropriate remedy when hostilities exist between the parties or when the employment relationship has been irreparably damaged by the dispute over the discharge or by lack of confidence and loyalty. *See Stafford,* 749 F.Supp. at 785. The circumstances of a particular case may also make reinstatement an inappropriate remedy, and ordinarily, it should be left to the trial court's careful discrimination to determine its application in each case.

■■■■ With the foregoing in mind, we address Thurston's contention that reinstatement with back pay is the only appropriate remedy for the wrongful termination of his employment. The spectrum of remedies available in a breach of contract action is not as narrow at Thurston asserts. A trial court is accorded considerable latitude and discretion in applying and formulating an equitable remedy. *LHIW, Inc. v. DeLorean,* 753 P.2d 961, 963 (Utah 1988); *Morris v. Sykes,* 624 P.2d 681, 684 (Utah 1981). We review the trial court's determination of a remedy in this case under a standard that acknowledges considerable discretion in the trial court, and we will not upset the court's ruling unless it constituted an abuse of discretion. *Morris,* 624 P.2d at 684.

In support of his argument that reinstatement with back pay is the only appropriate remedy in this case, Thurston cites us to *Pratt v. Board of Education,* 564 P.2d 294 (Utah 1977), *on rehearing,* 569 P.2d 1112 (Utah 1977) (per curiam) ("*Pratt I*"), *Pratt v. Board of Education,* 592 P.2d 628 (Utah 1979) ("*Pratt II*"), and *Piacitelli v. Southern Utah State College,* 636 P.2d 1063 (Utah 1981), as well as to instances of reinstatement in actions brought under 42 U.S.C. § 1983, Title VII, the Federal Labor Standards Act, and judicial reviews of administrative appeal procedures. Thurston argues that under these authorities reinstatement with back pay is always the remedy unless there is evidence of hostility or unless the employee does not want to return to his former employment. Thus, Thurston argues, reinstatement with back pay should be granted in his situation because there is no evidence of hostility and he desires to return to his employment with the County.

Thurston's argument is unpersuasive. First, neither the *Pratt* decisions nor *Piacitelli* mandates reinstatement with back pay to remedy a breach of an employment contract. In *Pratt I,* a tenured teacher sought damages for breach of contract and reinstatement of his teaching position. The Court affirmed the trial court's order enforcing a negative covenant in the employment contract: "[T]he defendant would not dismiss a tenured teacher and employ or retain a non-tenured teacher." *Pratt I,* 564 P.2d at 296. The court stated that "enforcement of the negative covenant ha[d] the indirect effect of reinstating [the teacher]" because of his tenured status. *Id.* at 297. In *Piacitelli,* the employee challenged the college's deci-

sion not to renew his employment contract. The Court affirmed the district court's conclusion that the college had substantially complied with the personnel manual's requirements in terminating the employee's contract and affirmed the judgment denying reinstatement. *Piacitelli,* 636 P.2d at 1067. Nothing in either the *Pratt* decisions or *Piacitelli* supports Thurston's assertion that reinstatement with back pay is the only appropriate remedy for breach of an employment contract.

Second, Thurston's action is not based upon any statutory violation for which reinstatement is a prescribed remedy. Accordingly, the cases based upon statutory violations which Thurston cites are not persuasive on the appropriate remedy for his breach of contract action.[3] As stated above, an order for reinstatement is permissible in a breach of employment contract action as an equitable remedy when damages are inadequate or unascertainable.

 Thurston has failed to show that damages are inadequate or unascertainable in this case. In addition, Thurston's employment was terminated during a reduction in force action. His position was not filled after the RIF, and his duties have been absorbed by other workers. Another employee would have to be laid off to accommodate a reinstatement order, and it is even possible that Thurston could be reached for further layoff if the County properly applied its reduction in force criteria. In light of these facts, it was not an abuse of discretion for the trial court to deny equitable relief.

Affirmed.

ZIMMERMAN, C.J., and DURHAM and RUSSON, JJ., concur.

HOWE, J., concurs in the result.

---

**3.** As we noted in *Thurston I,* this case was brought as an action for breach of an employment contract, not as a request for judicial review of Thurston's grievance appeal. The determination of remedies in a review of administrative appeals is not based upon the same legal principles as those used to determine remedies in breach of contract actions.