FILED
United States Court of Appeals
Tenth Circuit

November 6, 2007

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

ROSSA LEE SIMMONS,

      Plaintiff-Appellant,

v.

UINTAH HEALTH CARE SPECIAL
SERVICE DISTRICT,

      Defendant-Appellee.

No. 06-4187

**Appeal from the United States District Court
for the District of Utah
(D.C. No. Civ. No. 2:02-cv-00214-DB)**

Kenneth B. Grimes, Kenneth B. Grimes, P.C., Salt Lake City, Utah, for Plaintiff-Appellant.

Steve K. Gordon, Durham, Jones & Pinegar, P.C., Salt Lake City, Utah, for Defendant-Appellee.

Before **HENRY, SEYMOUR,** and **GORSUCH**, Circuit Judges.

**GORSUCH**, Circuit Judge.

The Administrative Control Board ("Board") is the final and authoritative policymaking voice of Uintah County, Utah's Health Care Special Services District ("District"). After the Board fired Ms. Simmons as administrator of the

District's nursing home, she responded with a lawsuit alleging that she failed to receive the process due her under the District's written termination policies. A bench trial followed. The district court eventually found that the Board had indeed failed to follow the District's termination procedures in dismissing Ms. Simmons, and it reasoned that this failure precluded the District's liability. But, while municipalities are rightly held liable for those actions taken by employees in conformance with official policy, this is hardly the only basis available for assigning municipal liability. Municipalities are equally answerable for actions undertaken by their final policymakers, whether or not those actions conform to their own preexisting rules. Were the law otherwise, a municipality's leaders would have the very strange incentive to flout their own policies. Or perhaps even enact policies with the deliberate purpose of disregarding them. While the law is often subtle and sometimes complex, it is rarely so unreasonable. We reverse.

I

The undisputed facts are these.[1] For years, Uintah County owned and operated a nursing home in Vernal, Utah. Beginning in 2000, and with the aim of controlling the home's operating costs, the County formed the District, a political subdivision, to assume control of the home. In turn, the District constituted the

---

[1] Some of these facts are documented in Ms. Simmons's supplemental appendix, and her unopposed motion to submit that appendix is hereby granted.

Board to make final decisions regarding the home's management. As part of its start up efforts, the Board voted to adopt and apply a number of the County's existing policies to the District's operations. These policies included a Reduction in Force ("RIF") plan that established processes for what is euphemistically known as "downsizing," whether due to lack of funds, insufficient workload, or organizational restructuring. The policy provided, among other things, that a RIF must be the "last option for cost savings"; consideration must be given to whether the RIF can be accomplished by normal attrition, transfer, or reassignment rather than by dismissal; any dismissal must take account of the seniority of existing employees; and affected employees must be given two weeks' advance written notice of any separation and an opportunity for administrative review.

Ms. Simmons was the nursing home's longtime administrator, first hired in 1985 as a County employee. When the District came into being in 2000, Ms. Simmons, along with other employees, was transferred to the District's payroll. In early 2001, the Board decided to privatize the nursing home's operations, turning over its management to a private company called Traditions Health Care, Inc. The Board then discussed what to do with Ms. Simmons. Some Board members expressed dissatisfaction with her work performance. Many argued that her job could be more cheaply and efficiently handled by a Traditions employee. During an executive session of the Board at which Ms. Simmons was not present, Board members voted to let Ms. Simmons go, but wrestled with whether to fire

her for cause or to invoke the District's RIF policy. Ultimately, they opted to pursue the latter course. It is undisputed, however, that the Board then made no effort whatsoever to comply with the District's RIF policies.

Ms. Simmons filed grievances with the District and the County, though not in strict accordance with the District's adopted grievance policies. Ms. Simmons never received any official response to her grievances, though she was told the County would "get back to her." Eventually, she filed this suit against the District for wrongful termination of employment without due process of law under 42 U.S.C. § 1983.

After a three-day bench trial, the district court held that Ms. Simmons failed to establish municipal liability. More specifically, the court held that the District is liable only for those actions of its employees taken in compliance with official District policy. Because the Board defied the District's RIF policy (that the Board itself adopted), the court reasoned, the District could not be held liable. Alternatively, the district court held that Ms. Simmons's claim failed because she neglected to exhaust available administrative remedies before suing, and because the District would have terminated Ms. Simmons even if the Board had followed its RIF policy. Ms. Simmons now appeals.[2]

II

---

[2] Ms. Simmons does not appeal the district court's dismissal of Uintah County as a defendant, or her separate Title VII claim.

The district court's primary holding turns on a question of law – namely, whether the District may be held liable only for actions by its employees in compliance with official policy – and thus requires *de novo* review in this court.

We are in full accord with the District that actions taken by employees in compliance with official policy or custom are one way to establish liability on the part of a municipality. Section 1983 was passed to curb violations of constitutional rights by local authorities under color of law, and acts pursuant to policy or custom undoubtedly qualify. We also fully agree that municipalities cannot be held liable for unauthorized actions by their employees. Under Section 1983, municipalities cannot be held liable for the actions of others under the common law principle of *respondeat superior*; they are responsible only for their *own* actions. *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 691-95; *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478-80 (1986). When employees take actions specifically authorized by policy or custom, their actions can be fairly said to be the municipality's. But when they act inconsistently with official policy or custom, though perhaps even still within the scope of employment, that will not suffice. As the Supreme Court in *Pembaur* explained, when passing Section 1983, "Congress never questioned its power to impose civil liability on municipalities for their *own* illegal acts, [but] Congress did doubt its constitutional power to impose such liability in order to oblige municipalities to control the conduct of *others*." 475 U.S. at 479.

We part ways with the District and the district court, however, when it comes to the question whether showing compliance with a preexisting policy or longstanding custom is the *only* way to demonstrate that an action is properly viewed as the municipality's own. While *Monell* found liability on the basis of an "official policy as the moving force of the constitutional violation," 436 U.S. at 694, it fell to the Court in *Pembaur* to establish that actions taken by a municipality's final policymakers also represent acts of "official policy" giving rise to municipal liability. *Pembaur*, 475 U.S. at 481. And this makes sense. An act by a municipality's final policymaking authority is no less an act of the institution than the act of a subordinate employee conforming to a preexisting policy or custom. As the Court in *Pembaur* explained, "[n]o one has ever doubted, for instance, that a municipality may be liable under § 1983 for a single decision by its properly constituted legislative body – whether or not that body had taken similar action in the past or intended to do so in the future – because even a single decision by such a body unquestionably constitutes an act of official government policy." *Id.* at 480. Putting the point even more plainly, the Court added that "where action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly." *Id.* at 481.[3] Accordingly, a municipality is

---

[3] *See also Dill v. City of Edmond*, 155 F.3d 1193, 1211 (10th Cir. 1998); *Camfield v. City of Oklahoma City*, 248 F.3d 1214, 1229 (10th Cir. 1995); *Randle*
(continued...)

responsible for *both* actions taken by subordinate employees in conformance with preexisting official policies or customs *and* actions taken by final policymakers, whose conduct can be no less described as the "official policy" of a municipality.

This must include even actions by final policymakers taken in defiance of a policy or custom that they themselves adopted.[4] Were the rule of law different, we would invite irrational results. Holding municipalities immune from liability whenever their final policymakers disregard their own written policies would serve to encourage city leaders to flout such rules. Policymakers, like the members of the Board before us, would have little reason to abide by their own mandates, like the RIF policy, and indeed an incentive to adopt and then proceed deliberately to ignore them. Such a rule of law would thus serve to undermine rather than enhance Section 1983's purposes. *See generally City of St. Louis v. Praprotnik*, 485 U.S. 112, 126 (1988) (plurality op.) (rejecting claim that a municipality may avoid liability by delegating discretionary authority from policymakers to lower level employees; explaining that to hold otherwise would prevent Section 1983 from "serv[ing] its intended purpose"); *Jett v. Dallas Ind.*

---

[3](...continued)
*v. City of Aurora*, 69 F.3d 441, 447 (10th Cir. 1995).

[4] We have previously held that the fact an official is meaningfully bound by policies developed by others often signals that he or she is not a final policymaker. *See Randle*, 69 F.3d at 448-49. That test, however, does not bear on our current situation – *viz.*, where the Board in question has demonstrated that it is not meaningfully bound by its *own* policies.

*Sch. Dist.*, 491 U.S. 701 (1989) (remanding for a determination of whether a school superintendent was a final policymaker for whose actions the school district could be held liable, even though the district had a written policy prohibiting the actions alleged).[5]

With this understanding of the law in hand, we return to the facts of this case. It is undisputed before us that the Board *was* the final policymaker on personnel matters for the District. It is also undisputed that Ms. Simmons's employment was terminated pursuant to the Board's own actions. The decision to fire Ms. Simmons is thus no less chargeable as an official act of the District than one taken pursuant to the District's written RIF policy. Accordingly, we cannot agree with the district court's judgment that the District is immune from potential Section 1983 liability on *Monell* grounds.

## III

The District urges two alternative bases for holding it not liable. First, the district court held that Ms. Simmons could have obtained sufficient due process had she strictly complied with the District's post-separation grievance procedures, and the District urges us to consider this a sufficient, independent basis for affirming the district court's judgment. But this we cannot do. The exhaustion of

---

[5] Of course, the fact that a final policymaking body may act for the municipality and thus impose municipal liability when flouting its own rules does not mean that subordinates may do so. As we have already indicated, under *Monell* subordinate employees impose liability by following policy, not when they disregard it.

administrative remedies is not required of plaintiffs asserting employment termination claims under Section 1983. *See Patsy v. Bd. of Regents of State of Fla.*, 457 U.S. 496, 516 (1982); *see also Hopkins v. Okla. Pub. Employees Retirement Sys.*, 150 F.3d 1155, 1160 (10th Cir. 1998).

Second, the district court found, as a factual matter, that Ms. Simmons would have been fired even if the Board had followed the RIF policy. This, the District urges, constitutes a sufficient and separate basis for affirming the judgment in its favor. Again, we cannot agree. The fact that Ms. Simmons would have been fired even if the Board followed its RIF policies bears, at most, on the extent of her damages, not on the District's liability for failing to afford the process due her in the course of her termination. Even when one does not prove any compensable damages from a due process violation, under Section 1983 a cause of action and nominal damages remain available. *See Carey v. Piphus*, 435 U.S. 247, 266-67 (1978) (directing that if, on remand, the court determined that students' suspensions were justified, the students could nevertheless recover nominal damages).[6]

---

[6] The District's cases are not to the contrary. The bulk of them hold merely that in order to recover *compensatory* damages for procedural due process violations, a causal connection must be established. *See, e.g.*, *Graham v. Baughman*, 772 F.2d 441, 447 (8th Cir. 1985); *Pollock v. Baxter Manor Nursing Home*, 716 F.2d 545, 547 (8th Cir. 1983); *Laje v. R. E. Thomason Gen. Hosp.*, 665 F.2d 724, 728 (5th Cir. 1982). To be sure, in *Garza v. Henderson*, 779 F.2d 390 (7th Cir. 1985), the court held that the plaintiff bore the burden of demonstrating that "actual damages" were caused by his due process violation and
(continued...)

* * *

Actions taken by a municipality's final policymakers, even in contravention of their own written policies, are fairly attributable to the municipality and can give rise to liability. Neither can municipalities escape this result simply because a plaintiff failed to exhaust administrative remedies or because the adverse action would have occurred even if its written policies had been followed. Of course, finding none of the arguments proffered by the District for judgment on its behalf persuasive does not mean that Ms. Simmons is herself entitled to judgment. She must still show, among other things, that she had a protected property interest in her continued employment, and that she was deprived of that interest without the appropriate level of process, as well as the scope (if any) of her damages. No doubt a number of defenses remain to be considered on these and other scores. Because it is not our place to decide such matters in the first instance, we remand for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*

---

[6](...continued)
affirmed dismissal of his suit for failure to do so. *Id.* at 395. But the cases cited by *Garza* for support demonstrate only that actual, compensatory damages may not be awarded absent proof of causation. *See id.* at 396 (quoting *Lossman v. Pekarske*, 707 F.2d 288, 291 (7th Cir. 1983)).