**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 9, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ROSSA LEE SIMMONS,

Plaintiff-Appellant,

v.

UINTAH HEALTH CARE
SPECIAL SERVICE DISTRICT,

Defendant-Appellee.

No. 08-4196
(D. Utah)
(D.C. No. 2:02-CV-00214-TS)

---

**ORDER AND JUDGMENT**[*]

---

Before **HENRY**, Chief Judge, and **BRISCOE** and **LUCERO**, Circuit Judges.

---

Rossa Lee Simmons filed this 42 U.S.C. § 1983 action alleging a violation

of her procedural and substantive due process rights in the February 2001

termination of her employment with the Uintah County Care Center, a nursing

home in Vernal, Utah. The Care Center is operated by the Health Care Special

Service District (the District), a political subdivision of Uintah County. The

---

[*] This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

District maintained that Ms. Simmons's discharge constituted a reduction in force (RIF).

After a remand following a prior appeal, *see Simmons v. Uintah Health Care Special Serv. Dist.*, 506 F.3d 1281 (10th Cir. 2007), the district court granted the District's motion for judgment on the pleadings. As to Ms. Simmons's procedural due process claim, the court concluded that she lacked a property interest in her employment. As to Ms. Simmons's substantive due process claim, the court adopted a prior finding (following a bench trial) that the District's Board had not acted arbitrarily and capriciously.

In this appeal, Ms. Simmons argues that (1) the district court erred in ruling that she lacked a property interest in her employment; and (2) the district court should be allowed to reconsider its factual finding that she would have been fired even if the District had followed its RIF policy.

We are not persuaded. Ms. Simmons has failed to establish that she had a "legitimate expectation in continued employment." *Hesse v. Town of Jackson, Wyo.*, 541 F.3d 1240, 1245 (10th Cir. 2008) (citation omitted). We therefore affirm the district court's grant of the District's motion for judgment on the pleadings.

# I. BACKGROUND

## A. The termination of Ms. Simmons's employment

Ms. Simmons began working for Uintah County in 1985, when she was hired as an office manager at the Care Center. One year later, she was promoted to Administrator, overseeing its operations and reporting to one of the Uintah County Commissioners.

The events leading up to Ms. Simmons's termination began in December 2000, when Uintah County created the District as a political subdivision "with the aim of cutting operation costs which were paid by county taxes." Aplt's App. at 382 (Dist. Ct. Findings of Fact and Conclusions of Law, filed July 12, 2006). In turn, the District created the Administrative Control Board "to make decisions regarding the management and operations of the Care Center." *Id.* The Administrative Control Board decided that it could further reduce costs by allowing a private entity to manage the Care Center, and it selected Traditions Heath Care, Inc., to do so.

Traditions personnel suggested that the Care Center could reduce its costs by terminating Ms. Simmons's employment and having a Traditions employee perform her duties. Some members of the Administrative Control Board discussed the possibility of terminating Ms. Simmons for cause. However, the Board eventually decided that it would treat Ms. Simmons's discharge as a RIF.

At that time, the County's RIF policy sought "to establish a uniform process for reducing the county's work force due to lack of funds, workload changes, organizational changes, or other conditions." Aplt's App. at 375. It provided that "[a] reduction in force shall be the last option taken for cost savings[,]" and it required department heads to develop "a work force adjustment plan" when a RIF was required. *Id.* The policy required these plans to include "[a] specification of the category of work to be eliminated considering interchangeability of skills, size of organization, number of positions to be reduced, and similar factors." *Id.* The policy set forth the order in which employees should be discharged, beginning with temporary employees and proceeding to probationary employees, "[t]ime-limited employees with career service status[,]" and, finally, "[c]areer service employees in the order of their retention score." *Id.* The policy stated, "The Personnel Director shall give an employee separated due to a reduction in force a minimum of two weeks notification of separation and an opportunity for administrative review." *Id.* at 376.

The District terminated Ms. Simmons's employment on February 14, 2001, without affording her advance notice or an opportunity for a hearing. "The County Personnel Director notified Ms. Simmons of her termination and was sent a letter stating that she had been RIFed pursuant to 'Section 250.1 and 250.2 of Uintah County Policies and Procedures.'" *Id.* at 383. The termination letter

- 4 -

informed Ms. Simmons that she would be placed on the "'reappointment roster' for one year and would be eligible for rehire within that period for any position for which she was qualified." *Id.* After her termination, Traditions hired an employee to perform the administrative functions for which she had been responsible.

### B. Ms. Simmons's § 1983 action

In March 2002, Ms. Simmons filed this action against the District and Uintah County. She alleged: (1) a 42 U.S.C. § 1983 claim for the violation of her procedural due process rights in the termination of her employment; (2) a § 1983 claim for the violation of her substantive due process rights; and (3) a gender discrimination claim pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17.

On February 8, 2005, the district court issued an Order & Opinion granting partial summary judgment to Ms. Simmons. In particular, the court concluded that it was not disputed that the District had failed to follow its own RIF policy. It explained that "[t]he District's failure in this case is not that it decided to RIF Simmons instead of firing her for cause, but rather that it did not properly RIF Simmons according to its own RIF policy." *Id.* at 37.

In the same Order & Opinion, the district court denied the motions for summary judgment filed by the District and the County. The court also made the

following statements regarding the existence of a property interest in Ms. Simmons's job:

> The District does not dispute that Simmons has a protected property interest in her employment. Nor does the District dispute that its RIF policy provides Simmons with a protected property right.

*Id.* at 34.

Prior to trial, Ms. Simmons voluntarily dismissed the County as a defendant and dropped her Title VII claim altogether. Thus, her only remaining claims alleged § 1983 substantive and procedural due process violations against the District.

**C. Findings of Fact and Conclusions of Law following the May 2006 bench trial.**

After a bench trial, the district court issued findings of fact and conclusions of law. It ruled as follows:

1. The District could not be held liable for the alleged due process violation because it had a proper RIF policy. The alleged due process violation was committed by the Board, which was not a defendant.

2. "[Ms.] Simmons could have obtained the appropriate level of due process by following the Grievance Policy to seek administrative review of the Board's decision. She failed to do so. Thus, to the extent there was any lack of due process, it was not due to acts or omissions on the part of the District." *Id.* at 389.

3.     The decision to terminate Ms. Simmons did not shock the conscience, and thus she could not prevail on her substantive due process claim.

4.     "The evidence presented at trial established that Ms. Simmons' employment would have been terminated even if the members of the Board followed the RIF policy.  Thus, as a matter of law, Ms. Simmons is not entitled to recover damages."  *Id.* at 390.

**D.  The Tenth Circuit's reversal of the district court's opinion**

In a prior appeal, *see Simmons,* 506 F.3d at 1284-86, this court reversed the district court's judgment for the defendant District on two grounds.

First, we held that the district court had erred in holding that the District itself could not be liable on a § 1983 due process claim because it was the Administrative Control Board that had violated the District's RIF policy in discharging Ms. Simmons.  We explained that the district court had ignored the principle that a governmental entity may be held liable for the final decisions of its policymakers.  *See id.* at 1284-85 (discussing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691-95 (1978) and *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478-80 (1986)).  Here, "The Administrative Control Board is the final and authoritative policymaking voice of Uintah County, Utah's Health Care Special Services District."  506 F.3d at 1283.

Second, we concluded that the district court erred in ruling that Ms. Simmons was foreclosed from recovering on her § 1983 due process claim

because she failed to comply with the District's grievance procedures. "[T]he exhaustion of administrative remedies is not required of plaintiffs asserting employment termination claims under Section 1983." *Id.* at 1286 (citing *Patsy v. Bd. of Regents of State of Fla.*, 457 U.S. 496, 516 (1982)).

Finally, we held that the district court's factual finding that Ms. Simmons would have been fired even if its Board had followed the RIF policy did not bar her due process claim: "The fact that Ms. Simmons would have been fired even if the Board followed its RIF policies bears, at most, on the extent of her damages, not on the District's liability for failing to afford the process due her in the course of her termination. Even when one does not prove any compensable damages from a due process violation, under Section 1983 a cause of action and nominal damages remain available." *Id.*

After pronouncing these holdings, in a concluding paragraph, we noted: "Of course, finding none of the arguments proffered by the District for judgment on its behalf persuasive does not mean that Ms. Simmons is herself entitled to judgment. She must still show, among other things, that she had a protected property interest in her continued employment, and that she was deprived of that interest without the appropriate level of process, as well as the scope (if any) of her damages. No doubt a number of defenses remain to be considered on these and other scores. Because it is not our place to decide such matters in the first

instance, we remand for further proceedings not inconsistent with this opinion."
*Id.* at 1287.

**E.  The district court's grant of the District's motion for judgment on the pleadings**

Following remand, the case was reassigned to another district judge, who granted the District's motion for judgment on the pleadings.  The court first concluded that the issue of whether Ms. Simmons had a property interest in her employment had not yet been resolved—despite the statements in its prior order that "[t]he District does not dispute that Simmons has a protected property interest in her employment" and that "the District [does not] dispute that its RIF policy provides Simmons with a protected property right."  Aplt's App. at 34. The court explained that "[the prior order] did not determine the issue of a protected property interest.  Instead, it merely noted what elements the Defendant contested for the Motion [*i.e.*, the District's initial motion for summary judgment].  Defendant did not concede that issue, the Court did not rule on that issue, and Defendant properly contested that issue at trial."  *Id.* at 476 (Mem. Dec. & Order, filed Sept. 29, 2008).

The court also addressed the fact that the District's Board did not follow its RIF policy or the requirements of a state statute—Utah Code Ann. § 17-33-5(3)(b)(xv)–before discharging Ms. Simmons.  It noted that Utah case law interpreting this statute requires counties to consider only "the relative ability,

- 9 -

seniority, and merit of each employee" in making layoff decisions. *Id.* (discussing *Thurston v. Box Elder County*, 835 P.2d 165, 169 (Utah 1992)). Here, the district court said, even though there was no evidence that the District's Board considered these factors, "it would be difficult for them to do so in light of Plaintiff being the sole administrator employed at the nursing home at the time of dismissal. To consider her *relative* ability, seniority, and merit makes little sense when she is the only employee to consider." *Id.* at 476-77.

The district court then invoked Tenth Circuit precedent holding that "'an entitlement to nothing but procedure . . . cannot be the basis for a property interest.'" *Id.* at 477 (quoting *Darr v. Town of Telluride, Colo*., 495 F.3d 1243, 1251 (10th Cir. 2007) (quoting *Robbins v. Bureau of Land Mgmt*., 438 F.3d 1074, 1085 (10th Cir. 2006))). Thus, the fact that the District's RIF policy required certain steps to be taken before termination was not sufficient to create the constitutionally protected property interest necessary to support a § 1983 due process claim.

As to Ms. Simmons's substantive due process claim, the court noted that, in its findings of fact and conclusions of law following the May 2006 bench trial, it had held that the District's Board had not acted arbitrarily and capriciously and that the District was thus entitled to judgment on that claim. The court explained that "because the Tenth Circuit failed to overturn the factual findings that the Board did not act arbitrarily and capriciously, and that the Board's decision had a

rational basis and did not shock the conscience, those findings are still applicable to the case." *Id.* at 478. Accordingly, based on those findings, Ms. Simmons had not shown a violation of substantive due process, and the District was entitled to judgment on the pleadings.

## II. DISCUSSION

As the district court observed, in order to establish that she was discharged in violation of her procedural due process rights under the Fourteenth Amendment, Ms. Simmons was required to prove that she had a property interest in her employment. *See Teigen v. Renfrow,* 511 F.3d 1072, 1078 (10th Cir. 2007). In this appeal, Ms. Simmons challenges (1) the district court's ruling that she lacked such a property interest. She maintains that the district court (a) erred in refusing to apply the law of the case on this issue; (b) used the wrong legal standard; and (c) failed to consider relevant evidence. She also maintains that (2) the district court should be allowed to reconsider its factual finding that she would have been fired even if the District had followed its RIF policy.[1]

Ms. Simmons's arguments raise legal issues, and we therefore review the district court's decision de novo. *See Nieto v. Kapoor*, 268 F.3d 1208, 1217 (10th Cir. 2001) (noting that a motion for judgment in a bench trial is governed by Rule 52(c) of the Federal Rules of Civil Procedure and that "[w]e review the district

---

[1] In this appeal, Ms. Simmons does not challenge the district court's entry of judgment in favor of the District on her substantive due process claim.

- 11 -

court's . . . legal conclusions de novo"). We agree with the district court that Ms. Simmons lacked a property interest in her employment and that the District was entitled to judgment in its favor on her § 1983 procedural due process claim. In light of that conclusion, we do not consider Ms. Simmons's argument regarding reconsideration of the district court's factual findings.

**A. The district court did not violate the law-of-the-case doctrine.**

Ms. Simmons first argues that the district court erred in not treating as the law of the case the prior statements (by the judge who was first assigned to the case) that the District was not contesting the proposition that she had a property interest in her job.

In support of this contention, she relies primarily upon the following statement by the first judge in the midst of the closing arguments during the bench trial.

> [Ms. Simmons's counsel]: Now, in this case we do have a termination, but it was pursuant to a reduction in force. The defendant has argued all along that the discipline policy did not apply. It has only been in the last few days that they have argued that it applied. The reduction in force policy is what most obviously applies to this case, and it certainly limits or constrains the right of the county and the district to impose a reduction in force.

> The Court: *But my understanding, from our previous discussion and my previous order, is that the law of the case here was all based on a finding and a recognition, which I don't think was contested by the defendant, that she had a protectable property right in the RIF program if she were RIF'd, period.*

- 12 -

> [Ms. Simmons's counsel]: I believe that is what the court held.
>
> The Court: That was the whole essence of my prior order, and it is the law of the case. I don't know why we are even discussing that again.
>
> [Ms. Simmons's counsel]: Well, I agree.

Aplt's App. at 332 (emphasis added).

"The law of the case is a judicial doctrine designed to promote decisional finality. Once a court decides an issue, the doctrine comes into play to prevent the re-litigation of that issue in subsequent proceedings in the same case." *Pittsburg & Midway Coal Mining Co. v. Watchman*, 52 F.3d 1531, 1536 n.4 (10th Cir. 1995), *abrogated on other grounds by Alaska v. Native Village of Venetie Tribal Gov't*, 522 U.S. 520 (1998). "The doctrine applies to issues previously decided, either explicitly or by necessary implication." *Guidry v. Sheet Metal Workers Int'l Ass'n*, 10 F.3d 700, 705 (10th Cir. 1993) (citation omitted).

Here, we are not persuaded that the first-assigned district judge actually decided the property-interest issue. As we have noted, in the February 8, 2005 order that addressed the parties' initial motions for summary judgment, the district court did state that "[t]he District does not dispute that Simmons has a protected property interest in her employment." Aplt's App. at 34. However, the judge never made a formal ruling that addressed the existence of a property interest. Morever, throughout the proceedings, the District had contested the

- 13 -

property-interest issue. In particular, in its answer, it disputed Ms. Simmons's contention that she had such an interest. *See id.* at 3, 11 (denying Ms. Simmons's allegations that the District's policies created a property interest in her employment). In its trial brief, the District again contended that Ms. Simmons lacked a property interest. *See* Aple's Supp. App. at 56 (arguing that "[Ms. Simmons] did not have a protected property interest"). And, during the bench trial, at the conclusion of closing arguments, the District's counsel responded as follows when asked if he had anything to add:

> The only thing I would have to add is when the Court brings up [the question of whether] they could have fired her at will, and the answer to that is yes, and that implicates the authority we have cited in our motion and that disposes of the case in our mind.

Aplt's App. at 372.

Additionally, even though the first-assigned district court judge stated that the District did not dispute the property interest issue, our prior opinion in this case expressly concluded that Ms. Simmons still had the burden of establishing that she had a property interest. *See Simmons*, 506 F.3d at 1287 (stating that "[Ms. Simmons] must still show, among other things, that she had a protected property interest in her continued employment").

Accordingly, the district court did not err in declining to treat the comments during the closing argument of the bench trial as the law of the case.

**B. The district court applied the correct legal standard in determining that Ms. Simmons lacked a property interest in her employment.**

Next, Ms. Simmons argues that the district court applied the incorrect standard in determining that she lacked a property interest in her employment. Ms. Simmons points to the district court's statement that "[a]n employee has a property interest in employment if she has "'tenure, a contract for a fixed term, an implied promise of continued employment, or if state law allows dismissal only for cause or its equivalent.'" Aplt's App. at 475 (quoting *Darr*, 495 F.3d at 1251). According to Ms. Simmons, that standard is too narrow. She points to another statement in *Darr*: "*For example,* an employee may possess a property interest in public employment if she has tenure, a contract for a fixed term, an implied promise of continued employment, or if state law allows dismissal only for cause or its equivalent." Aplt's Br. at 20 (quoting *Darr*, 495 F.3d at 1250) (emphasis added). Thus, in her view, "*Darr* recognizes that the named categories are only examples of protected property interests." *Id.* at 20.

Ms. Simmons then invokes a series of Utah state cases which, in her view, "recognize[] protected property interests in employment other than 'just cause' limitations." *Id.* at 20-21 (discussing *Cook v. Zions First Nat'l Bank*, 919 P.2d 56 (Utah 1996); *Sanderson v. First Sec. Leasing Co.*, 844 P.2d 303 (Utah 1992); *Thurston*, 835 P.2d 165; *Lowe v. Sorenson Research Co.*, 779 P.2d 668 (Utah 1989); and *Arnold v. B.J. Titan Servs. Co.*, 783 P.2d 541 (Utah 1989)). She

therefore maintains that, even though she cannot establish that she was terminable only for cause, she still had a property interest in her position with the District.

Ms. Simmons further explains that her property interest is based upon the following elements of the RIF policy:

> (1) failure to determine that a RIF was the "last option" available to achieve the desired cost savings, as required by Section 1 of the RIF Policy; (2) failure to specify the category of work to be eliminated, considering the interchangeability of skills and other factors, as required by Section 1.A. of the RIF Policy; (3) failure to facilitate the placement of career service employees through normal attrition, transfer or reassignment, as required by Section 1.C. of the RIF Policy; (4) failure to afford Simmons two weeks advance notice of her termination, as required by Section 5 of the RIF policy; and (5) failure to perform steps (1)-(4) above *prior* to the RIF, as required by Section 1 of the RIF Policy.

Aplt's Br. at 19 n.6.

In *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972), the Supreme Court explained that to have a property interest in a particular benefit, one must establish more than "an abstract need or desire" or "a unilateral expectation" that he or she will receive it. *Id.* Instead, property interests involve "legitimate claim[s] of entitlement." *Id.* Although protected property interests "extend well beyond actual ownership of real estate, chattels, or money," they arise not from the federal constitution but from independent sources, such as state law. *Id.* at 572. Statutes, ordinances, contracts, implied contracts, as well as rules and

- 16 -

policies developed by government officials may all create such interests. *Calhoun v. Gaines*, 982 F.2d 1470, 1473-74 (10th Cir. 1992).

Applying *Roth*, this circuit has concluded, in the employment context, that a property interest is "a legitimate expectation in continued employment." *Hesse*, 541 F.3d at 1245; *see also Kingsford v. Salt Lake City Sch. Dist.*, 247 F.3d 1123, 1131 (10th Cir. 2001) (stating that "[a] public employee . . . must have a legitimate claim of entitlement to continued public employment for a property interest to arise") (internal quotation marks omitted). Under the applicable Utah law, unless there is an employment contract with a definite term of duration, employment is presumed to be at-will. *See Brehany v. Nordstrom, Inc.*, 812 P.2d 49, 52-53 (Utah 1991). This presumption, however, "can be overcome by an affirmative showing by the plaintiff that the parties . . . impliedly . . . agreed to terminate the relationship for cause alone." *Berube v. Fashion Ctr., Ltd.*, 771 P.2d 1033, 1044 (Utah 1989).

Here, Ms. Simmons has failed to identify any statute, policy, or promise establishing that her employment was terminable only for cause or that otherwise established "a legitimate expectation in continued employment." *Hesse*, 541 F.3d at 1245. As we have noted, she does invoke the District's RIF policy. That policy states that "[a] reduction in force shall be the last option taken for cost savings[,]" and it directs the district to follow certain procedures (*e.g.*, by stating that the personnel director "shall give an employee separated due to a reduction in

- 17 -

force a minimum of two weeks written notification of separation and an opportunity for administrative review"). *See* Aplt's App. at 375-76. However, the RIF policy does not limit the District's discretion to terminate Ms. Simmons's employment at any time for any reason. In other words, nothing in the policy indicates that employees like Ms. Simmons may *only* be discharged pursuant to a RIF or suggests that discharge is not permissible if the employer's contention that a particular discharge constitutes a RIF is false.

We agree with the district court that the District appears to have violated its RIF policy. In particular, there is no indication that the District afforded Ms. Simmons "two weeks written notice of separation and an opportunity for administrative review." *Id.* at 376. However, it is well established that procedural protections in state statutes, regulations, and policies—like those in the District's RIF policy–are insufficient to create property interests protected by the Fourteenth Amendment. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985) ("'Property' cannot be defined by the procedures provided for its deprivation any more than can life or liberty."); *Ripley v. Wyo. Med. Ctr., Inc.,* 559 F.3d 1119, 1124-25 (10th Cir.) (concluding that a state statute regarding factors to be considered in admission to medical staffs of public hospitals created "a procedural right without a mandated outcome . . . [that] [was] not protected under the Due Process Clause"), *cert. denied*, 130 S. Ct. 287 (2009); *Teigen*, 511 F.3d at 1081 (stating that "[p]laintiffs' claimed entitlement to be considered for

- 18 -

promotion in accordance with the state system of merit is no more than a claim of entitlement to a fair process" and that "[e]ven assuming state law grants every state employee the right to be fairly considered for promotion, this right is not itself a substantive right [protected by the Fourteenth Amendment], but rather a vehicle for arriving at the ultimate promotion decision"); *Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence, Kan.,* 927 F.2d 1111, 1117 (10th Cir. 1991) ("The Supreme Court has recognized that the mere existence of an entitlement to a hearing under state law, without further substantive limitation, does not give rise to an independent substantive liberty interest protected by the [F]ourteenth [A]mendment.").

The Utah state court decisions cited by Ms. Simmons are not to the contrary. Those cases *do* suggest that some at-will employees may have contract-based rights under state law. *See, e.g.*, *Thurston,* 835 P.2d at 169-70 (holding in a breach of contract action that a state statute established that "[e]mployees have a right to rely on the layoff and termination procedures advanced by their employers" and that "[t]o the extent that [the government employer] considered factors in addition to seniority, ability, and merit, the County's termination [of the plaintiff's] employment was in violation of the [County Personnel Management Act]"); *Lowe*, 779 P.2d at 670 (holding that an at-will employee stated a cause of action for breach of contract based on an employer's failure to follow the provisions of a policy manual that required the employer to provide warnings

- 19 -

before terminating employees). However, the Utah state court cases do not apply the standard for determining the existence of a property interest under the Fourteenth Amendment. Although Ms. Simmons's allegations could conceivably support a state law cause of action based on the District's failure to follow its RIF policy, she has not asserted such a cause of action here.

Accordingly, we conclude that the district court applied the correct legal standard—a legitimate claim of entitlement to continued employment—in concluding that Ms. Simmons lacked a property interest protected by the Fourteenth Amendment.

**C. Ms. Simmons's testimony about the effect of the RIF policy is not controlling.**

As a final challenge to the district court's conclusion that she lacked a property interest in her job, Ms. Simmons argues that the district court's decision is not supported by the evidence. She cites her own testimony that she was familiar with the District's RIF policy, that it applied to her, and that her termination violated the RIF policy. In her brief, she argues that "[t]here was no evidence to the contrary presented at [t]rial." Aplt's Br. at 22.

We discern no grounds for reversal in this cursory argument. The significance of the policy—*i.e.*, whether it created a property interest—is a legal question that cannot be resolved by Ms. Simmons's testimony. *Ripley,* 559 F.3d at 1123-26 (treating the issue of whether an employee had a protected property

- 20 -

interest as a legal question). For the reasons stated above, the RIF policy did not create a property interest protected by the Fourteenth Amendment, and Ms. Simmons's testimony does not affect that conclusion.[2]

### III. CONCLUSION

Because Ms. Simmons lacked a property interest in her continued employment, we AFFIRM the district court's order granting judgment in favor of the District.

Entered for the Court,

Robert H. Henry
Chief Judge

---

[2] In light of our holding that Ms. Simmons lacked a property interest in her continued employment, we do not consider her second argument in this appeal—that the district court should reconsider its factual finding that she would have been discharged even if the District had followed its RIF policy. As the prior panel explained, the district court's finding—that Ms. Simmons would have been discharged in any event–goes to the question of damages rather than liability. Because Ms. Simmons lacked a property interest, the damages question is not relevant here.